O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MELISSA KHAN,                          )   NO. EDCV 12-2106-MAN
                                       )
              Plaintiff,               )
                                       )   MEMORANDUM OPINION
       v.                              )
                                       )   AND ORDER
CAROLYN W. COLVIN,[1]                  )
Acting Commissioner of Social          )
Security,                              )
                                       )
              Defendant.               )
_____   )

       Plaintiff filed a Complaint on December 13, 2012, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").   On January 17, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on September 9, 2013, in which:   plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken

---

       [1]       Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability, DIB, and SSI on June 29, 2009. (Administrative Record ("A.R.") 12.)  Plaintiff, who was born on March 14, 1971 (A.R. 19),[2] claims to have been disabled since June 16, 2009, due to being "[b]ipolar, schizophreni[ic], [having] severe depression, [and] hearing voices."  (A.R. 157).  Plaintiff has past relevant work ("PRW") experience as a care provider and house cleaner.  (A.R. 19.)

After the Commissioner denied plaintiff's claim initially and upon consideration, plaintiff requested a hearing.  (A.R. 12.)  On June 27, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge William K. Mueller (the "ALJ").  (*Id.*)  Vocational expert ("VE") Troy L. Scott also testified.  (*Id.*)  On September 6, 2011, the ALJ denied plaintiff's claim (A.R. 12-21), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his September 6, 2011 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and plaintiff has not engaged in substantial gainful activity since June 16, 2009, the alleged onset date of her disability. (A.R. 14.)  The ALJ determined that plaintiff has the severe impairment of an affective disorder. (*Id.*)  The ALJ also determined that plaintiff has the medically determinable impairments of "degenerative disk disease of her lumbar spine and obesity," but "[t]hese impairments are non-

---

[2]     On the alleged disability onset date, plaintiff was 38 years old, which is defined as a younger individual.  (*Id.*; citing 20 C.F.R. §§ 404.1563, 416.964.)

1  severe because alone and combined they do not cause [plaintiff] more than minimal limitations."
2  (*Id.*)  The ALJ concluded, however, that plaintiff does not have an impairment or combination of
3  impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart
4  P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).
5  (A.R. 15.)
6
7      After reviewing the record, the ALJ determined that plaintiff has the residual functional
8  capacity ("RFC") to perform a full range of work at all exertional levels but with the following
9  nonexertional limitations:  simple repetitive routine tasks with only occasional interaction with the
10  public and coworkers.  (A.R. 15.)  In making this finding, the ALJ considered the subjective
11  symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the
12  medical evidence and opinions of record.  (A.R. 16-19.)
13
14      Based on plaintiff's age, education,[3] work experience, and RFC, as well as the testimony
15  of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national
16  economy that [plaintiff] can perform," including the jobs of hand packager, industrial cleaner and
17  landscape worker.  (A.R. 19-20.)
18
19      Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the
20  Social Security Act, since June 16, 2009, the alleged onset date, through September 6, 2011, the
21  date of the ALJ's decision.  (A.R. 21.)
22  ///
23  ///
24  ///
25  ///
26
27
28      [3]      The ALJ determined that plaintiff "has at least a high school education and is able
    to communicate in English."  (A.R. 19.)

1

2

## STANDARD OF REVIEW

3    Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

4    whether it is free from legal error and supported by substantial evidence in the record as a whole.

5    <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence

6    as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).

7    The "evidence must be more than a mere scintilla but not necessarily a preponderance."  <u>Connett</u>

8    <u>v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute

9    substantial evidence, only those 'reasonably drawn from the record' will suffice."  <u>Widmark v.</u>

10   <u>Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

11

12   Although this Court cannot substitute its discretion for that of the Commissioner, the Court

13   nonetheless must review the record as a whole, "weighing both the evidence that supports and

14   the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y of Health</u>

15   <u>and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995

16   (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

17   testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.

18   1995).

19

20   The Court will uphold the Commissioner's decision when the evidence is susceptible to

21   more than one rational interpretation.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

22   However, the Court may review only the reasons stated by the ALJ in his decision "and may not

23   affirm the ALJ on a ground upon which he did not rely."  <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>,

24   340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless

25   error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

26   to the ultimate nondisability determination.'"  <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th

27   Cir. 2006) (quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400

28   F.3d at 679.

4

**DISCUSSION**

Plaintiff claims that the ALJ erred in failing to properly consider:  (1) the medical evidence regarding her physical and mental impairments; and (2) her subjective complaints.  (Joint Stipulation ("Joint Stip.") at 3.)

**I.   The ALJ Committed Reversible Error At Step Two And Failed To Properly Determine Plaintiff's Physical And Mental RFC.**

A.   Legal Standard

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  To reject the contradicted opinion of an examining physician, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.  The opinion of an examining physician may constitute substantial evidence upon which an ALJ may rely in assessing a claimant's RFC, if it is properly supported by the medical evidence. *See, e.g.*, Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constitute substantial evidence, because it rested on independent examination of claimant).

5

In determining a claimant's RFC, an ALJ will consider all the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In so doing, the ALJ will consider all of the claimant's medically determinable impairments, including those that are not "'severe.'"  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  The ALJ also will consider "any statement about what [the claimant] can still do that have been provided by medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416. 945(a)(3).

        B.      <u>The ALJ Committed Reversible Error At Step Two In Finding Plaintiff's Degenerative Disk Disease of the Lumbar Spine To Not Be Severe And In Failing To Properly Consider The Opinion Of State Agency Reviewing Physician Dr. Keith Wahl In Determining Plaintiff's Physical RFC.</u>

        1.      Relevant Medical Evidence

An April 1, 2009 MRI of plaintiff's lumbar spine indicated "minimal degenerative disk disease with 3-4 MM circumference disk protrusion/disk bulging at L4-5 and 6 MM paracentral L5-S1 disk protrusion" and "mild degenerative facet joint hypertrophy in the lower lumbar spine causing only mild to moderate neural foraminal compromise at L4-5 and L5-S1."  (A.R. 264.)  The MRI did not reveal "subluxation or compression fracture or spinal stenosis."  (*Id.*)

On October 8, 2009, after reviewing plaintiff's medical history, including the April 2009 MRI, state agency physician Keith J. Wahl, M.D., opined that the "evidence is supportive of a light [RFC] with mild disk protrusion, normal gait and normal neuro," and he concluded that a "light [RFC] with seizure precautions" would be appropriate for plaintiff.  (A.R. 502-03.)  Specifically, he opined that plaintiff could:  lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; climb ramps and stairs, balance, stoop, kneel, crouch, crawl occasionally, but

never climb ladders/ropes or scaffolds; and not push and/or pull with her lower extremities.  (A.R. 497-98.)  Further, plaintiff would need to avoid concentrated exposure to vibration (such as work with vibrating tools) and all exposure to hazards such as heights.  (A.R. 499.)  As a seizure precaution, plaintiff should also avoid unprotected heights, open bodies of water, open electrical circuits, driving, or use of heavy equipment.[4]  (*Id.*)

A March 27, 2011 MRI of plaintiff's lumbar spine, indicated "mild degenerative disk disease and facet joint disease at the L5-S1 level."  (A.R. 850.)

## 2.    Analysis

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416. 920(a)(4)(ii), 416.920(c).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[5]  20 C.F.R. §§ 404.1520(c), 416.920(c).  Despite the use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Accordingly, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005)

---

[4]    On April 22, 2010, state agency reviewing physician G. Taylor-Holmes, M.D., reviewed plaintiff's updated medical record and opined that there was "[n]othing to suggest a different RFC" than that opined by Dr. Wahl.  (A.R. 575-75.)

[5]    Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).  Examples of such activities include: (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling"; (2) the capacity for "seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) the "[u]se of judgment"; (5) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting." *Id.*

1   (citation omitted; emphasis in original).  When determining whether an impairment is severe,

2   claimant's age, education, and work experience will not be considered.  20 C.F.R. §§ 404.1520(c),

3   416.920(c).

4

5       In finding that plaintiff's lumbar degenerative disk disease was not severe, the ALJ relied

6   on a March 2011 MRI, indicating mild degenerative disk disease and facet joint disease at the L5-

7   S1 level.  (A.R. 17.)  However, by relying solely on the March 2011 MRI in concluding that

8   plaintiff's mild degenerative disk disease is non-severe, the ALJ implicitly ignores Dr. Wahl's

9   opinion, who limited plaintiff to a light RFC based, in part, on plaintiff's mild disk protrusion, as

10  indicated by the April 2009 MRI.[6]  (A.R. 502-03.)  Thus, Dr. Wahl's opinion, which was also

11  uncontradicted, strongly suggests that plaintiff's back impairment would have more than a *de

12  minimus* impact on her ability to perform basic work activities.  As a result, the ALJ's failure to

13  **either** give clear and convincing reasons for rejecting Dr. Wahl's opinion regarding the functional

14  limitations stemming from plaintiff's degenerative disk disease **or** find plaintiff's disk disease to

15  be severe at step two of the sequential evaluation process constitutes error.

16

17      Moreover, the ALJ's error cannot be deemed harmless.  In general, an ALJ's failure to

18  discuss a claimant's impairment at step two may be deemed harmless only when the ALJ's error

19  did not prejudice a claimant at later steps in the sequential evaluation process.  In Burch, for

20  example, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to

21  discuss plaintiff's obesity in his step two analysis.  400 F.3d at 682.  The Ninth Circuit concluded,

22  however, that the assumed error was harmless, because it would not have impacted the ALJ's

23  analysis at either step four or five of the evaluation process.  Specifically, the Ninth Circuit found

24  that, for purposes of step four, plaintiff failed to point to any evidence of functional limitations due

25  to her obesity that would have impacted the ALJ's analysis.  *Id.* at 683.  Further, at step five, the

26

27  ───────────────

28      [6]   It appears that there is not much significant change between the April 2009 and
    March 2011 MRI of plaintiff's lumbar spine.  (*Compare* A.R. 264, *with* A.R. 850.)

1   Ninth Circuit found that no prejudice occurred, because the ALJ "adequately considered
2   [plaintiff's] obesity in his RFC determination"-- *i.e.*, there was no "functional limitations as a result
3   of [plaintiff's] obesity that the ALJ failed to consider." *Id.* at 684; *see also* <u>Lewis v. Astrue</u>, 498
4   F.3d 909, 911 (9th Cir. 2007) (finding that any error the ALJ committed in failing to list plaintiff's
5   bursitis at step two was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and
6   "considered any limitations posed by the bursitis at [s]tep 4").

7

8        In this case, unlike in <u>Burch</u> and <u>Lewis</u>, the Court cannot conclude that the ALJ's failure to
9   consider plaintiff's degenerative disk disease and her resulting limitations is harmless error
10  because as discussed below:  the ALJ failed to give the requisite clear and convincing reasons for
11  his rejection of Dr. Wahl's opinion regarding the various work limitations resulting from plaintiff's
12  degenerative disk disease and other physical impairments; and, critically, the work limitations
13  assessed by Dr. Wahl could have impacted the VE's testimony and the ALJ's analysis at later steps
14  in the sequential evaluation process. *See* <u>Stout</u>, 454 F.3d at 1055 (finding an error to be harmless
15  when it "was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability
16  conclusion").

17

18       The ALJ stated that he gave "limited weight" to Dr. Wahl's opinion that plaintiff could only
19  perform a range of light work, because Dr. Wahl "did not examine [plaintiff], review all of her
20  records or have sufficient information to determine her credibility." (A.R. 19.)  Having given Dr.
21  Wahl's opinion such limited weight, the ALJ determined that plaintiff's "physical impairments are
22  non-severe causing her no exertional limitations." (*Id.*)

23

24       The ALJ's first reason for rejecting Dr. Wahl's opinion -- *to wit*, that Dr. Wahl did not
25  examine plaintiff -- is not a convincing reason.  If an examination of was essential to credit a
26  physician's opinion, then the only opinions an ALJ would be required to consider would be those
27  of treating and examining physicians.  But the regulations require the ALJ to consider the opinions
28  of all physicians. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Thus, the ALJ cannot simply reject

1  the opinions of state agency physicians based on a lack of examination.   Social Security Ruling

2  ("SSR") 96–6p (opinions of state agency physicians and psychologists must be considered).

3

4       The ALJ's second reason for rejecting the Dr. Wahl's opinion -- to *wit*, that Dr. Wahl did

5  not review all of plaintiff's records and have sufficient information to determine her credibility --

6  is not convincing for several reasons.

7

8       First, given that there are no other medical opinions in the record assessing plaintiff's

9  physical functional limitations, the ALJ's duty to develop the record was triggered by his

10 conclusion that Dr. Wahl's opinion was not based on a sufficiently complete picture of plaintiff's

11 condition.  Absent a reliable medical opinion regarding plaintiff's physical impairments and related

12 functional limitations, the ALJ lacked a necessary foundation on which to make a proper

13 determination of whether plaintiff has an impairment that precludes her from gainful employment.

14 Tonapetyan, 242 F.3d at 1150 (noting that an ALJ "has an independent duty to fully and fairly

15 develop the record and to assure that the claimant's interests are considered") (citations and

16 internal quotations omitted); *see* Widmark, 454 F.3d at 1069 (an ALJ has a duty to develop the

17 record where there is a "gap" in the medical evidence).  Thus, the ALJ should have requested that

18 plaintiff undergo a consultative evaluation so that a proper disability determination could be made

19 on an adequate medical record.  The ALJ's failure to develop such a record constituted error.

20

21      Second, the ALJ may not discredit a state agency physician's opinion, because that

22 physician had insufficient information to determine plaintiff's credibility.  Because Dr. Wahl's

23 opinion appears to be based on plaintiff's medical records, and there is nothing in the record to

24 suggest that Dr. Wahl relied more heavily on plaintiff's subjective complaints than the objective

25 medical evidence of record, the ALJ's second reason does not constitute a clear and convincing

26 reason for rejecting his opinion. *See generally* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199-

27 1200 (9th Cir. 2008) (noting that a physician's opinion should not be discredited solely on the

28 basis of an ALJ's determination that the plaintiff's subjective complaints were not credible).

Third, it is not entirely clear upon whose medical opinion the ALJ relied in determining that plaintiff could perform a full range of work at all exertional levels.  In fact, the record is entirely devoid of any physician's opinion that supports the ALJ's determination.  Accordingly, it appears that the ALJ's RFC assessment is based on nothing more than his own lay medical opinion, and it is well-settled that an ALJ may not render a medical judgment and interject his own medical opinion, nor may he substitute his own diagnosis for that of the claimant's physician.  *See* Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted ); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (an ALJ "must not succumb to the temptation to play doctor and make [her] own independent medical findings").  The ALJ's improper rejection of Dr. Wahl's opinion and apparent substitution of his own lay medical opinion constitutes reversible error.

Accordingly, the ALJ erred in finding plaintiff's degenerative disk disease of the lumbar spine to be non-severe due to his failure to give clear and convincing reasons for rejecting Dr. Wahl's opinion and his apparent reliance on his own medical opinion, an opinion he is not qualified to make.[7]  This case, thus, must be remanded.

///

///

///

///

---

[7]      Plaintiff also briefly contends within this claim that the ALJ failed to mention in his decision the "report of radiculopathy in [p]laintiff's legs along with a positive straight leg raise test dated November 25, 2009 [citation omitted], which is indicative of nerve root compromise." (Joint  Stip. at 5.)   However, other than the one treatment note cited by plaintiff, there is no suggestion in plaintiff's medical records of any functional limitation(s) associated with the radiculopathy in her legs.  On remand, and further development of the record, a competent medical opinion should be obtained regarding whether such radiculopathy persists, is significant, and gives rise to any functional limitations.

C.   <u>On Remand, The ALJ Should Reconsider Dr. Multani's Opinion
And Reassess Plaintiff's Mental RFC</u>.

Plaintiff contends that the ALJ failed to properly consider the medical evidence pertaining to her mental impairments, particularly the opinion of treating physician Gurmeet Multani.[8]  (Joint Stip. at 6-10.)

1.   Relevant Medical Evidence

On December 16, 2009. Dr. Multani completed an "Evaluation Form For Mental Disorder," which indicated that he first examined plaintiff in August 2005, and examined her once a month thereafter.  (A.R. 520.)  He diagnosed plaintiff with schizophrenia and depression.  (*Id.*)  Dr. Multani opined that plaintiff has difficulty dealing with reality, has been hearing voices, and is agitated and delusional.  (*Id.*)  She has poor ability to carry out tasks and feels depressed, anxious, and overwhelmed.  (*Id.*)  Further, plaintiff is poorly motivated, has been isolated and withdrawn, and has poor coping skills.  (*Id.*)  She is unable to deal with stress and has mood swings.  (*Id.*)  On mental status examination, Dr. Multani noted that plaintiff is tense and anxious but cooperative, has good eye contact, and is fairly verbal and expressive.  (A.R. 521.)  Plaintiff is oriented to time, place and person, but she has poor judgment, concentration, and memory.  (*Id.*)  Further, her insight is lacking.  (*Id.*)  Plaintiff shows signs of depression and anxiety, but exhibits no homicidal or suicidal ideations.  (*Id.*)  Finally, plaintiff is confused and has auditory

---

[8]    Plaintiff also contends that the ALJ failed to properly consider various GAF scores noted in plaintiff's medical records.  (Joint Stip. at 8-9.)  However, the ALJ's failure to discuss all of plaintiff's GAF scores does not constitute reversible error.  The Social Security regulations do not require an ALJ to take the GAF score(s) into account in determining the extent of an individual's disability; while the score may help the ALJ assess the claimant's disability, it is not essential, and the ALJ's failure to rely on the GAF does not constitute an improper application of the law.  <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002) (while a GAF score may be of considerable help to the ALJ, it is not essential; the ALJ's failure to reference the GAF score, standing alone, does not make the ALJ's findings inaccurate).  Nevertheless, the selective citation of only some GAF scores may be improper if it facilitates or results in a mischaracterization of the record.

1  hallucinations and paranoid ideations.  (*Id.*)

2

3      On July 19, 2010, Dr. Multani completed another "Evaluation Form For Mental Disorders"

4  for plaintiff.  (A.R. 581-84.)  Dr. Multani's opinions in this form were similar to, if not the same

5  as, those set forth in his December 2009 responses.  (*Id.*)  However, on this form, Dr. Multani

6  also discussed plaintiff's current level of functioning.  (A.R. 582-83.)  Dr. Multani noted, somewhat

7  inconsistently, that plaintiff:  does not need assistance to properly care for her personal affairs

8  uses public transportation, pays bills, can "maintain residence," and cares for her own grooming

9  and hygiene; has difficulty interacting appropriately and communicating effectively with family

10  members, neighbors, and friends; cannot sustain attention and cannot complete everyday

11  household routines; is unable to carry out tasks and "should not be able to go out for training for

12  work or apprenticeship for eight hours a day."  (*Id.*)

13

14              2.      Analysis

15

16      The ALJ gave "limited weight" to Dr. Multani's opinion because his opinion:  (1) is internally

17  inconsistent; (2) does not acknowledge plaintiff's history of exaggerating her symptoms and

18  inconsistencies in her claims; (3) relies exclusively on plaintiff's unsupported subjective

19  complaints; and (4) is not supported by the treatment records of other physicians of record.  (A.R.

20  18.)

21

22      The ALJ's first reason for rejecting Dr. Multani's opinion -- *to wit*, that his opinion was

23  internally inconsistent -- is specific and legitimate.  As noted by the ALJ, Dr. Multani opined that

24  plaintiff does not need assistance to properly care for her personal affairs and can "maintain

25  residence."  (A.R. 18, 583.)  However, this appears to be inconsistent with his conclusion, in the

26  same report, that plaintiff cannot complete everyday household routines.  (*Id.*)  Further, Dr.

27  Multani opined that plaintiff cannot sustain attention, is unable to carry out tasks and work on

28  goals, and could not work 8-hours a day, which the ALJ also properly noted is inconsistent with

1   his opinion that plaintiff is able to take care of herself and live independently.  (*Id.*); *see* Rollins

2   v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of treating doctor's

3   opinion that was internally inconsistent).  Thus, this was a specific and legitimate reason for

4   rejecting the opinion of Dr. Multani.

5

6          The ALJ's second and third reasons for rejecting Dr. Multani's opinion -- *to wit*, that Dr.

7   Multani fails to acknowledge plaintiff's history of exaggerating her symptoms and inconsistencies

8   in her claims and appears to rely exclusively on plaintiff's unsupported subjective complaints --

9   is unavailing. It is true that the opinion of a physician premised primarily or to a large extent on

10  a claimant's subjective complaints may be given less weight where the evidence in the record

11  supports the ALJ in discounting the claimant's credibility.  *See* Tonapetyan, 242 F.3d at 1149;

12  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  On the other

13  hand, "an ALJ does not provide clear and convincing reasons for rejecting an examining

14  physician's opinion by questioning the credibility of the [claimant's] complaints where the

15  [physician] does not discredit those complaints and supports his ultimate opinion with his own

16  observations." Ryan, 528 F.3d at 1199–1200 (noting nothing in the record suggested the

17  examining physician in that case relied on claimant's description of her symptoms more heavily

18  than on his own clinical observations); *see also* Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.

19  1987); Sanchez v. Apfel, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000); Clester v. Apfel, 70 F. Supp.

20  2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic

21  impression of psychiatric disorder, just as results of physical examination provide basis for

22  diagnosis of physical illness or injury).  It appears that Dr. Multani substantially based his opinion

23  on his own observations of plaintiff's condition and his own examination findings, and there does

24  not appear to be any indication in Dr. Multani's reports that he found plaintiff to be less than

25  credible.  (*See* A.R. 530-22, 581-84.)  Accordingly, the ALJ's second and third reasons cannot

26  constitute specific and legitimate reasons for rejecting the opinion of Dr. Multani.

27  ///

28  ///

14

1        The ALJ's fourth reason for rejecting the opinion of Dr. Multani -- that his opinion is

2   inconsistent with the treatment records of other physicians -- is impermissibly conclusory, because

3   it provides no specific reference to any such alleged inconsistency.  (*See* A.R. 18); *see also*

4   Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299 (9th Cir. 1999) (noting that "conclusory

5   reasons will not justify an ALJ's rejection of a medical opinion"); Embrey v. Bowen, 849 F.2d 418,

6   421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective

7   findings or are contrary to the preponderant conclusions mandated by the objective findings does

8   not achieve the level of specificity our prior cases have required . . . .  The ALJ must do more than

9   offer his conclusions. He must set forth his own interpretation and explain why they, rather than

10  the doctors', are correct.").

11

12       Moreover, it is again not entirely clear upon whose medical opinion(s) the ALJ relied in

13  assessing that plaintiff would only be limited to "simple repetitive routine tasks with occasional

14  interaction with the public and coworkers." (A.R. 15.)  The ALJ only notes that he has considered

15  plaintiff's "records, subjective complaints, activities of daily living and the testimony herein and

16  finds the above impairments and residual functional capacity" in determining plaintiff's RFC. (A.R.

17  19.)  It appears from the record, however,  that the ALJ may have relied upon the opinion of state

18  agency reviewing physician Dr. Skopec in assessing plaintiff's non-exertional RFC, because a part

19  of Dr. Skopec's limitations are reflected in the ALJ's RFC assessment for plaintiff.[9]  For example,

20

21      [9]      On October 23, 2009, state agency physician H. Skopec, M.D. completed a "Mental
    Residual Functional Capacity Assessment" and "Psychiatric Review Technique" form.  (A.R. 504-
22  19.)  Dr. Skopec noted that plaintiff suffers from an affective disorder, specifically bipolar and
    anxiety disorder.  (A.R. 507, 510-11.)  Dr. Skopec opined that plaintiff was moderately limited in
23  her ability to:  understand and remember detailed instructions; carry out detailed instructions;
    maintain attention and concentration for extended periods; complete a normal workday and
24  workweek without interruptions from psychologically based symptoms and to perform at a
    consistent pace without an unreasonable number and length of rest periods; interact appropriately
25  with the general public; and respond appropriately to changes in the work setting.  (A.R. 504-05.)
    After reviewing plaintiff's medical records, Dr. Skopec noted that plaintiff is partially credible,
26  because the "severity of limitations alleged [are] not supported by [the] overall obj[ective]
    evidence."  (A.R. 519.)  He noted that when plaintiff was compliant with her medications, her
27  symptoms were improved,  and her most recent mental status examination showed improvement
    with her anxiety.  (*Id.*)  In conclusion, Dr. Skopec opined that plaintiff could perform at least
28  simple repetitive, non-public work.  (*Id.*)  On April 23, 2010, after reviewing plaintiff's updated
    medical records, including Dr. Multani's December 2009 report, state agency physician Ansar

1   consistently with Dr. Skopec's opinion, the ALJ's RFC assessment for plaintiff includes a limitation
2   to simple repetitive tasks.  However, the RFC assessment does not also incorporate Dr. Skopec's
3   opinion that plaintiff would be limited to non-public work; rather, the ALJ determined that plaintiff
4   could have "occasional interaction with the public and coworkers." (A.R. 15.)  Thus, while the ALJ
5   need not accept the full extent of Dr. Skopec's opinion, the ALJ may not reject it, or significant
6   parts of it, without giving specific and legitimate reasons for so doing. <u>Shafer v. Astrue</u>, 518 F.3d
7   1067, 1069–70 (9th Cir. 2008) (noting that an ALJ's silent disregard of a nonexamining physician's
8   opinion "contravened governing regulations requiring him to . . . evaluate every medical opinion
9   received" and, thus, constituted legal error); <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir.
10  1984) (holding that the ALJ must explain why "significant probative evidence has been rejected")
11  (internal quotations and citations omitted); 20 C.F.R. §§ 404.1527, 416.927 (stating that
12  nonexamining source opinions are medical opinions that the ALJ must consider and weigh using
13  the factors enumerated in that section); SSR 96–6p (stating that an ALJ "may not ignore" state
14  agency medical consultant opinions "and must explain the weight given to these opinions in their
15  decisions").  The ALJ's failure to proffer any reason, let alone an appropriate reason, for failing
16  to incorporate properly and/or to explain the dismissal of a portion of Dr. Skopec's opinion
17  constitutes error.

18

19          In sum, as the ALJ only provided one specific and legitimate reason for rejecting Dr.
20  Multani's opinion and because his RFC determination with respect to plaintiff's non-exertional RFC
21  is not supported by substantial evidence, the ALJ must reconsider, on remand, Dr. Multani's
22  opinion when reassessing plaintiff's RFC.

23  ///
24  ///
25  ///

26

27  _____

28  Haroun, M.D. opined that there was "[n]othing to suggest a change in the initial decision." (A.R 577-78.)

1    **II.    The ALJ Properly Evaluated Plaintiff's Credibility**.

2

3         Once a disability claimant produces objective medical evidence of an underlying impairment

4    that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

5    testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart,

6    367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also*

7    20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).

8    "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she

9    may only find an applicant not credible by making specific findings as to credibility and stating

10   clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered

11   in weighing a claimant's credibility include:   (1) the claimant's reputation for truthfulness;  (2)

12   inconsistencies either in the claimant's testimony or between the claimant's testimony and her

13   conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from

14   physicians and third parties concerning the nature, severity, and effect of the symptoms of which

15   the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

16

17         After considering plaintiff's testimony, the ALJ cited no evidence of malingering by plaintiff

18   and concluded that "[plaintiff]'s medically determinable impairments could reasonably be expected

19   to cause the alleged symptoms."  (A.R. 17.)   However, the ALJ determined that plaintiff's

20   "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

21   credible to the extent they are inconsistent with the [RFC] assessment."  (*Id.*)  Given the absence

22   of malingering, the ALJ's reasons for finding that plaintiff is not credible with respect to her

23   subjective symptom testimony must be "clear and convincing."   The ALJ has proffered several

24   reasons in rejecting plaintiff's subjective symptoms, and the Court discusses the principal reasons

25   below.[10]  (A.R. 16-19.)

26

27         _____

28         [10]    It appears that the ALJ may have proffered additional reasons, in his decision, for rejecting plaintiff's credibility; however, the Court only addresses those reasons addressed by both plaintiff and defendant in the Joint Stipulation.

A.    Objective Medical Evidence

The ALJ first rejected plaintiff's subjective symptom testimony based on his conclusion that "her [medical] records do not support the degree of limitations [plaintiff] asserted." (A.R. 17.) Assuming *arguendo* that the objective medical evidence did not corroborate the degree of plaintiff's allegedly disabling symptoms, this factor cannot form the "sole basis" for discounting plaintiff's subjective symptom testimony. Burch, 400 F.3d at 681; *see* Bunnell, 947 F.2d at 34 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination rises or falls with the ALJ's other ground for discrediting plaintiff.

B.    Plaintiff's Drug-Use

The ALJ's second reason for discounting plaintiff's credibility -- to *wit*, plaintiff's drug-seeking behavior, her tendency to exaggerate her complaints in order to receive prescription pain medication, and the inconsistent statements about her drug use -- is clear and convincing.

As the ALJ noted, plaintiff "requested pain medication, reporting that she lost prior prescriptions and has left [a hospital] against medical advice" which suggested that plaintiff was drug-seeking. (A.R. 17.) Plaintiff presented to the emergency room six times between February 8, 2009, and February 26, 2009, alternating between Community Hospital of San Bernardino ("CHSB") and Arrowhead Regional Medical Center ("ARMC"). (A.R. 224–31, 321-24, 332-33.) On February 8, 2009, plaintiff went to ARMC, stating that she had back pain and had run out of her pain medication; plaintiff was prescribed Vicodin. (A.R. 230-31.) On February 13, 2009, plaintiff went to CHSB, stating that she had back pain and had run out of pain medication; plaintiff was

prescribed Norco.  (A.R. 332, 344.)  On February 14, 2009, plaintiff again went to ARMC, stating that she had back pain and herniated disks; plaintiff was given a prescription to refill Norco.  (A.R. 229.)  On February 17, 2009, plaintiff  presented to ARMC, stating that she had lower back pain and had run out of her pain medication, however it was noted that plaintiff had filled her prescription on February 9, and January 25, 2009.   (A.R. 226.)  On February 21, 2009, plaintiff again went to CHSB, stating that she had lower back pain and was requesting pain medication; plaintiff was given a prescription for Vicodin and Motrin.  (A.R. 321-23.)  On February 26, 2009, when plaintiff again presented herself to ARMC, it was noted that this visit was plaintiff's fifth emergency department visit, and plaintiff had stated that she had lost her other prescriptions.  (A.R. 225.)  Plaintiff was denied her pain medication refill.  (*Id.*)  On June 8, 2010, Dr. Doan Nguyen of ARMC noted that plaintiff was "very medication seeking" and that plaintiff was "exaggerating her symptoms . . . [in order to stay] in the hospital longer than she needed to."  (A.R. 740.)   Thus, the ALJ reasonably inferred from the foregoing that plaintiff was very "medication seeking" and that she exaggerated her complaints of pain to get pain medication; and as a result, the ALJ properly rejected her credibility. *See* Edlund v. Massanari, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (holding that evidence of drug-seeking and likelihood that claimant was exaggerating complaints of physical pain to feed drug addiction supported the ALJ's decision to reject his testimony).

The ALJ also discussed plaintiff's inconsistent statements about her alcohol and drug-use. As noted by the ALJ, plaintiff testified that she has "not had a problem with drugs and alcohol since 2002." (A.R. 16.)  However, in October 2009, plaintiff was diagnosed with "alcohol abuse with no mention of remission and cocaine and opiate dependence in remission."  (A.R. 16, 549.) Further, on May 31, 2010, plaintiff "showed positive for opiods." (A.R. 739.)  Plaintiff also denied her drug and alcohol history to her treatment providers.  (A.R. 216, 226, 230, 232, 236,  238, 240, 242, 244, 250, 254, 269, 275, 288, 295, 301, 303, 305, 308.)  Thus, this was a proper reason to discount plaintiff's credibility and her exaggerated testimony regarding her subjective symptoms. *See* Thomas, 278 F.3d at 959 (claimant's inconsistent statements regarding her drug

1  use supported the ALJ's finding that "this lack of candor carries over to her description of physical

2  pain"); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly relied on inconsistent

3  statements about alcohol abuse as a basis for rejecting claimant's testimony).

4

5              C.      Plaintiff's Inconsistent Statements

6

7          The ALJ's next ground for finding plaintiff not to be credible is also clear and convincing.

8  The ALJ is entitled to use ordinary techniques of credibility evaluation, including the claimant's

9  reputation for lying, prior inconsistent statements concerning her symptoms, and other testimony

10  by the claimant that appears less than candid. Smolen, 80 F.3d at 1284. The ALJ relied on

11  several inconsistences in plaintiff's various statements to reject her credibility. (A.R. 16-17.) In

12  particular, the ALJ noted that plaintiff testified she has been homeless, but then testified that she

13  is staying with a friend and paying $250 a month to stay there. (See A.R. 42-43.) That there

14  may be more than one reasonable interpretation of the record, and that the claimant's

15  interpretation differs from the ALJ's interpretation, does not necessarily warrant reversal of the

16  ALJ's finding. Rollins, 261 F.3d at 857. The Court cannot second guess the ALJ's credibility

17  finding if it is supported by substantial evidence in the record. Batson v. Comm'r of Soc. Sec.

18  Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

19

20              D.      Plaintiff's Gainful Work Activity

21

22          The ALJ also rejected plaintiff's credibility, because plaintiff had "previously applied for

23  benefits asserting an inability to work, but testified she performed work while self employed

24  during the time covered by her earlier application." (A.R. 16.) As noted by the ALJ, plaintiff

25  alleged, in a prior application for disability, an inability to work prior to 2009. (Id.) However,

26  plaintiff's earnings record indicates that she engaged in substantial gainful work activity, earning

27  $975 a month, as a house cleaner between 2003 and 2008. (A.R. 36-39, 139, 158, 167.) Thus,

28  this was a clear and convincing reason to reject plaintiff's credibility. See Carmickle v. Comm'r,

1  Soc. Sec. Admin., 533 F.3d 1155, 1161–62 (9th Cir. 2009) (noting that applying for

2  unemployment benefits is inconsistent with disability because one has to hold oneself out as

3  "available, willing and able to work").  This reason, therefore, is clear and convincing.[11]

4

5           E.    Treatment Compliance

6

7          The ALJ next concluded noted that, when plaintiff was treatment complaint, she

8  significantly improved.  (A.R. 16.)  The ALJ's reason is supported by substantial evidence.  When

9  asked if her psychiatric medications work for her, plaintiff testified, "[p]retty much, they've been

10  working, but it's not that I feel completely okay with myself.  It controls my -- what I feel, what

11  I see."  (A.R. 44.)  Further, after reviewing plaintiff's medical records, Dr. Skopec noted that it

12  "[a]ppears when compliant w[ith] meds[, symptoms] improved."  (A.R. 519.)  Thus, the ALJ was

13  entitled to discount plaintiff's credibility based on her positive response to conservative treatment.

14  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's

15  "response to conservative treatment undermines [claimant's] reports regarding the disabling

16  nature of his pain"); McKnight v. Comm'r Soc. Sec., 2013 WL 3773864, at *9 (E.D. Cal. July 17,

17  2013) (ALJ properly discounted physician's opinion based on claimant's positive response to

18  conservative treatment, including knee injections and pain medication).  This was a clear and

19  convincing reason to reject plaintiff's credibility.

20

21          Because the ALJ's credibility finding was supported by substantial evidence, the Court "may

22  not engage in second-guessing."  Thomas, 278 F.3d at 959 (citation omitted).  Plaintiff is not

23  entitled to reversal on this ground.

24

25  _____

26  [11]      As noted by plaintiff, there is no evidence in the record that plaintiff applied for
    benefits in a prior disability application.  (Joint Stip. at 17.)    Even assuming that the ALJ

27  improperly cited plaintiff's prior gainful work activity as a clear and convincing reason for rejecting
    her testimony, such error is harmless, because the ALJ provided other clear and convincing

28  reasons for rejecting plaintiff's testimony. See Carmickle, 533 F.3d at 1162 (a single erroneous
    basis for an ALJ's determination is harmless error if other valid reasons supporting that
    determination remain).

1    **III.    Remand Is Required.**

2

3        The decision whether to remand for further proceedings or order an immediate award of

4    benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th

5    Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or

6    where the record has been fully developed, it is appropriate to exercise this discretion to direct

7    an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further

8    proceedings turns upon the likely utility of such proceedings.").  However, where there are

9    outstanding issues that must be resolved before a determination of disability can be made, and

10   it is not clear from the record that the ALJ would be required to find the claimant disabled if all

11   the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

12

13       Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-

14   mentioned deficiencies and errors. On remand, the ALJ must correct the above-mentioned

15   deficiencies and errors.  After so doing, the ALJ may need to secure a consultative examination

16   for plaintiff and reassess plaintiff's RFC, in which case, testimony from a VE likely will be needed

17   to determine what work, if any, plaintiff can perform.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  June 24, 2014

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

23